UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OTIS THORNE,

    *Plaintiff*,

v.

PATRICK M. SHANAHAN,[1]

    *Defendant*.

No. 18-cv-2170 (DLF)

**MEMORANDUM OPINION**

Otis Thorne, appearing *pro se*, sues the Department of Defense (DOD) for employment discrimination based on race and color. He also alleges retaliation for engaging in protected activity. Before the Court is the defendant's Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment. *See* Dkt. 15. The defendant contends that Thorne failed to exhaust his administrative remedies prior to filing suit. For the reasons that follow, the Court will grant the defendant's motion.

**I. BACKGROUND**

    **A. Factual Allegations**

Thorne "is an African American male with dark color skin" who worked as a nursing assistant for the DOD's Defense Health Agency (DHA) from October 12, 2004, to November 14, 2016. Am. Compl. ¶¶ 1, 6, 13, Dkt. 7. On March 30, 2015, Thorne filed an equal employment opportunity (EEO) charge with the DOD, "claiming discrimination on the basis of his race and

---

[1] When this complaint was filed, James N. Mattis was the Secretary of Defense. When Patrick M. Shanahan became Secretary, he was substituted pursuant to Fed. R. Civ. P. 25(d).

color because the defendant's employees were harassing him on his job and because the defendant was taking disciplinary action against him." *Id*. ¶ 7. "Soon after" the DHA received notice of the charge, it "began taking additional adverse actions against" Thorne, "including accusing him of using controlled substances that required him to take a drug test, and . . . of engaging in other inappropriate behavior." *Id.* ¶ 8.

On September 13, 2015, Thorne was told that he was being investigated and was placed on administrative leave without pay. *Id*. ¶ 9. While on leave, Thorne filed a claim with the Merit Systems Protection Board (MSPB) "that included affirmative defenses of race and color discrimination and retaliation." *Id*. ¶ 11. The DHA "continued [Thorne's] leave without pay even though [he] attempted to report to work" after filing the claim with the MSPB. *Id*. ¶ 12.

Despite knowing the "plaintiff's whereabouts" and the reasons for his absence from work," the DOD "removed the plaintiff from federal service on or about November 14, 2016, allegedly because he was absent without leave." *Id*. ¶ 13. Thorne claims that he was not treated like "other nursing assistants who were white Caucasians subject to the same supervisory rules as the plaintiff who did not suffer the adverse actions as did the plaintiff." *Id*. ¶ 15.

**B. Procedural History**

1. *EEO Activity*

On March 30, 2015, Thorne filed a complaint with the DOD's Equal Opportunity and Diversity Management (EODM) office, alleging that DHA had discriminated against him based on his race and color and had subjected him to harassment in assigning duties and through discipline. Decl. of Martin Dietz ¶ 3, Dkt. 15-3 (Dietz Decl.). The office treated Thorne's contact as an "EEO pre-complaint" and assigned an EEO counselor. *Id.* In the section of the pre-complaint form captioned "Basis of Complaint," Thorne checked the boxes for race and

2

color but not reprisal. *Id.*, Ex. 1. After the EEO counselor's "numerous attempts" to contact Thorne by telephone and email failed, DHA, by letter of April 23, 2015, issued a Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Exs. 2, 3. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. Dietz Decl. ¶ 6.

In an email dated September 16, 2015, Thorne requested that his "EEO case . . . file[d] in [M]arch 2015" be reopened. *Id.*, Ex. 4. On October 20, 2015, "the EEO counselor reached Mr. Thorne by telephone, at which point Mr. Thorne informed the counselor that he wished to halt all conversation until he had an opportunity to consult with an attorney," which he expected to do "within approximately three days." *Id.* ¶ 8 (citing Exs. 4–5). After the counselor's "several" attempts to reach Thorne failed, DHA, by letter of November 2, 2015, issued a second Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 5. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶ 11. Nor does the agency have any record "that Mr. Thorne contacted EODM at any point after October 20, 2015." *Id.* ¶ 12.

2. *MSPB Activity*

Meanwhile, on February 9, 2015, Thorne filed an appeal with the MSPB, alleging harassment and discrimination. In an Initial Decision dated March 18, 2015, the Administrative Judge dismissed for lack of jurisdiction, concluding that Thorne "had not shown the agency's action amounted to a removal; a suspension exceeding 14 days; a reduction in grade; a reduction in pay; or a furlough of 30 days or less." Def.'s Ex. A at 2, Dkt. 15-4. Without "adverse actions appealable to the Board, . . . the Board lack[ed] jurisdiction over [the] discrimination claims." *Id.*

On October 28, 2015, and November 13, 2017, respectively, Thorne filed with the MSPB

an Individual Right of Action (IRA) appeal.  The first appeal alleged "retaliation for whistleblowing activity and constructive suspension."  Def.'s Ex. B, Dkt. 15-5.  The Administrative Judge found that Thorne "failed to satisfy the exhaustion requirement in 5 U.S.C. § 1214(a)(3)" and alternatively "failed to make non-frivolous allegations that he made a protected disclosure under 5 U.S.C. § 2302(b)(8)."  *Id*. at 5.  The Administrative Judge thus denied the whistleblowing claim and concluded that "the Board does not have jurisdiction over the appellant's IRA appeal."  *Id*. at 6.

Thorne's subsequent appeal, filed nearly one year after his removal, alleged retaliatory removal "for protected whistleblower activity."  Def.'s Ex. C, Dkt. 15-6.  The Administrative Judge concluded that Thorne "fail[ed] to meet his burden of establishing a nonfrivolous allegation that he engaged in protected activity" and dismissed the appeal for lack of jurisdiction.  *Id*. at 5.

On February 5, 2018, Thorne filed a petition with the Equal Employment Opportunity Commission (EEOC) "requesting review of the [latter] MSPB decision."  Am. Compl. ¶ 4; *see* Def.'s Ex. D, Dkt. 15-7.  In a March 15, 2018 opinion, the Commission denied review, reasoning:

> EEOC regulations provide that the Commission has jurisdiction over mixed-case appeals and complaints on which the MSPB has issued a decision that makes determinations on allegations of discrimination. Here, because the MSPB procedurally dismissed Petitioner's appeal for lack of IRA jurisdiction and did not make a determination on the merits o[f] any allegations of discrimination, the Commission has no jurisdiction to review Petitioner's appeal.

Def.'s Ex. D at 1–2 (citing 29 C.F.R. § 1614.303 *et seq*.).  The Commission observed that Thorne "was given the right to file a petition for review with the full Board by February 16, 2018" but "[i]t appears that he did not do so."  *Id*. at 1.  The Commission further noted that

"although whistle-blower retaliation is illegal, such claims are not within the purview of the statutes enforced by the Commission." *Id*. at 1 n.2. In contrast to Thorne's allegation, the Commission did not classify its opinion as "a final decision," Am. Compl. ¶ 4, nor did it issue a dismissal and right-to-sue notice.

### 3. *Court Proceedings*

In a different case, on April 16, 2018, Thorne filed his first complaint and a motion to proceed *in forma pauperis* (IFP) that was denied. *See Thorne v. Mattis*, No. 18-cv-886 (D.D.C. filed May 7, 2018), Dkt. 3. The court also denied Thorne's motion to reconsider the denial of IFP status but permitted time for him to either pay the $400 filing fee or submit a completed IFP application. Thorne did neither by the deadline, so Thorne's initial case was dismissed without prejudice and closed on September 7, 2018. *Id.*, Dkt. 6.

In this action, filed on September 20, 2018, Thorne was granted IFP status and eventually permitted to file the operative Amended Complaint. Dkt. 3. Thorne alleges that he "received an adverse decision from the MSPB on all his claims," a "final decision from the EEOC," and "filed a timely complaint," thereby exhausting "all administrative remedies[.]" Am. Compl. ¶¶ 4–5. He seeks, among other relief, a judgment that the DOD has violated his rights under Title VII of the Civil Rights Act of 1964, as amended; reinstatement of his position or front pay; lost back pay and benefits; and compensatory damages. *Id.* at 4.

## II. LEGAL STANDARD

The Court analyzes a motion to dismiss a Title VII claim for failure to exhaust administrative remedies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Deppner v. Spectrum Health Care Res., Inc*., 325 F. Supp. 3d 176, 183 (D.D.C. 2018). When, as here, a court relies on matters outside the complaint and answer to resolve a Rule 12(b)(6) motion, "the

motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In responding to a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe," *id*. at 151, and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Liberty Lobby*, 477 U.S. at 255. Thus, summary judgment is appropriate "when a putatively disputed body of evidentiary material could not, even assuming a sympathetic factfinder, reasonably support a finding crucial to the nonmoving party's legal position." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

**III. ANALYSIS**

Thorne alleges discrimination under Title VII of the Civil Rights Act of 1964. Title VII

proscribes discrimination against federal employees based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16. The D.C. Circuit has held that, while not explicitly stated, § 2000e-16 also prohibits the federal government from retaliating against its employees for exercising their rights under Title VII. *See Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (concluding that "Congress clearly has waived sovereign immunity from [Title VII] claims of retaliation").

Thorne, like all "Title VII complainants," must "timely exhaust [his] administrative remedies before bringing [his] claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (quotation marks and original alterations omitted); *see also* 42 U.S.C. § 2000e-16(c). This administrative exhaustion requirement is not jurisdictional but "may be 'mandatory' in the sense that a court must enforce [it] if a party 'properly raises' it," as the DOD has done here. *Fort Bend Cty., Texas*, 139 S. Ct. at 1849 (alteration omitted) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). It "serves the important purposes of giving the charged party notice of the claim[,] narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quotation marks and alteration omitted), and "ensur[ing] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). As such, a Title VII complaint may "be barred for failure to exhaust administrative remedies" if the agency was unable "to take final action on the merits" of a discrimination complaint. *Wilson v. Pena*, 79 F.3d 154, 164 (D.C. Cir. 1996). And the complaint "is limited in scope to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park*, 71 F.3d at 907.

One administrative remedy for federal employees like Thorne is the option to pursue "a 'mixed case'—a case in which the asserted claim (or claims) both arises under a federal

employment discrimination law (such as Title VII) and also relates to or stems from an action that is within the jurisdiction of the [MSPB]." *Niskey v. Kelly*, 859 F.3d 1, 6 (D.C. Cir. 2017), *cert. denied sub nom.*, *Niskey v. Duke*, 138 S. Ct. 427 (2017). The employee can thus either "forgo the internal agency exhaustion process and take his claim directly to the [MSPB]" or "file a mixed case complaint with the agency and then appeal to the [MSPB] after the agency disposes of (or fails to timely act on) the mixed-case complaint." *Id.* at 7 (citations omitted). Thorne says that he took both routes by filing claims with the MSPB and the EEOC alike. Am. Compl. ¶ 2–5. He alleges that he received "an adverse decision from the MSPB on all his claims" and "a final decision from the EEOC" and thus exhausted his administrative remedies *Id.* ¶ 4. The DOD responds that Thorne "has submitted no evidence establishing that he filed an administrative complaint or obtained a ruling by the [MSPB] or the [EEOC]." Def.'s Reply 1.

The DOD is correct. No rational trier of fact could conclude that Thorne obtained a final ruling from the MSPB about the claims alleged here. Thorne filed his first MSPB appeal on February 9, 2015, alleging that the DOD improperly harassed and discriminated against him. *See* Def.'s Ex. A at 1. But this appeal predated all the adverse actions clearly alleged in Thorne's complaint, *see Greer v. Paulson*, 505 F.3d 1306, 1317–18 (D.C. Cir. 2007) (discussing "the test for adverse action"), which allegedly happened on September 13, 2015 and November 14, 2016. Am. Compl. ¶¶ 9, 13. In addition, this MSPB appeal did not result in a final ruling on the merits; the MSPB dismissed it for lack of jurisdiction because the allegations of discrimination and harassment "do not amount to adverse actions appealable to the Board" Def.'s Ex. A at 2. Thorne does not say otherwise. *See* Pl.'s Decl. ¶¶ 1–12, Dkt. 18. Thorne filed two appeals with the MSPB that postdated the adverse actions alleged here, but both related to whistleblower retaliation claims—not the claims of discrimination or retaliation for filing employment

grievances that compose the complaint here—and were also dismissed for lack of jurisdiction. *See* Def.'s Exs. B–C.

Nor could a rational trier of fact conclude that Thorne obtained a final ruling on the merits of these claims from the EEOC. Thorne filed a petition with the EEOC in early 2018, asking it to review the MSPB's third and latest "initial decision" of January 2018. *See* Def.'s Ex. C. But the EEOC declined to consider Thorne's petition for review for two reasons: Thorne had not petitioned the *full* MSPB for review, despite the MSPB notifying Thorne of this right to do so; and the MSPB had dismissed Thorne's appeal for lack of jurisdiction, meaning that the EEOC lacked jurisdiction to review the MSPB decision. *Id.*

Faced with the reality that neither the MSPB nor the EEOC reached the merits of the claims at issue here, Thorne asks the Court to excuse his failure to exhaust those remedies. He explains that he "never received a letter from the [EEO] counselor notifying [him] of his right to file a formal complaint." Pl.'s Decl. ¶ 4. He thus argues that "any failures to exhaust [his] administrative remedies are the fault of the EEO counselor assigned to [his] case." *Id.* ¶ 11.

But the record forecloses Thorne's argument. It is undisputed that: Thorne confirmed his personal email address with the EEO counselor, Dietz Decl., Ex. 2; the counselor sent to that address two notices of Thorne's right to file a formal complaint, *id.* ¶¶ 6, 11; and Thorne used that email address to communicate with the EEO counselor *after* the EEO counselor sent the first notice to that address, *id.*, Ex. 4. In addition, after the EEO counselor sent (once again, to Thorne's personal email address) notice that it was closing the informal complaint process, Thorne asked the EEO counselor to "reopen" his case. *Id.* This shows that Thorne must have received notice that his first informal complaint was closed; he would have had no other reason to ask that the counselor reopen his case. *Id.* Though the Court may not cite the fact that

9

Thorne's testimony is self-interested as reason alone to discount it, *see Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016), Thorne's testimony alone cannot create a fact issue when it is inconsistent with all other record evidence. On this record, no rational trier of fact could conclude that Thorne failed to receive notice of his right to file a formal complaint.

What is more, even if Thorne did not receive such notice, his failure to exhaust his procedural remedies is not excused. Though it is unclear whether this doctrine extends beyond cases (unlike this one) that involve a statute of limitations defense, "an employee who missteps in the [administrative] process may avoid dismissal if he qualifies for equitable relief from the deadline by demonstrating good cause for the procedural failure." *Niskey*, 859 F.3d at 7 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). For example, "[a]n employee is entitled to equitable tolling if he demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))).

Thorne has not shown good cause for a failure to exhaust. Thorne "satisfied his obligation to initiate contact with an EEO Counselor." *Id.* at 9. In a document dated April 30, 2015, captioned "Attempts to Reach Otis Christopher Thorne for Counseling," the EEO counselor recounts that on April 10, 2015, she and Thorne "talked and preliminarily scheduled interview for Friday, April 17. He confirmed his private email address. He works nights and is off Wednesday and Thursday." Dietz Decl., Ex. 2. But from then on, the record establishes that the agency made numerous attempts to contact Thorne that went largely unanswered. An EEO counselor left messages for Thorne on April 13, 14, 15, 16, and 23 of 2015. *Id.* The counselor also documented that on one occasion Thorne "could not be located or he was not at work (per unidentified person)" and on another "[h]e was with patients and could not take any calls." *Id.*

On April 16, 2015, the counselor emailed Thorne, writing: "It is urgent that you respond to my telephone calls or to this email" and asked whether they were "meeting tomorrow, April 17th at 8 p.m. for [Thorne's] counseling session." *Id.* The counselor used Thorne's personal email address and a military email address. *See id.* Though the message to the military address was returned as undeliverable, the message to the personal address was not. *Id.* And that personal address matched the one that Thorne provided in the EEO Counselor's Report, *see id.*, Ex. 1, and from which Thorne sent his request on September 16, 2015 to reopen the pre-complaint process, *see id.*, Ex. 4.

After the EEO counselor's "numerous attempts" to contact Thorne by telephone and email failed, the DHA, by letter of April 23, 2015, issued a Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 3. The agency has no record that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶ 6.

In an email dated September 16, 2015, Thorne requested that his "EEO case . . . file[d] in [M]arch 2015" be reopened, which suggests that Thorne had received the April "right to file" notice. *Id.*, Ex. 4. On October 20, 2015, "the EEO counselor reached Mr. Thorne by telephone, at which point Mr. Thorne informed the counselor that he wished to halt all conversation until he had an opportunity to consult with an attorney," which he expected to do "within approximately three days." *Id.* ¶ 8 (citing Exs. 4–5). After the counselor's "several" attempts to reach Thorne again failed, DHA, by letter of November 2, 2015, issued a second Notice of Right to File a Formal Complaint of Discrimination. *Id.*, Ex. 5. On November 3, 2015, the DHA sent these documents electronically to Thorne's personal email, explaining that it was "closing [Thorne's] information Counseling and issuing [him] a Notice of Right to File your Formal Complaint with the agency should you desire to continue your EEO claim." *Id.*, Ex. 4. The agency has no record

that Thorne "filed a formal EEO complaint in response" to that Notice. *Id.* ¶ 11. Nor does the agency have any record "that Mr. Thorne contacted EODM at any point after October 20, 2015." *Id*. ¶ 12.

In response, Thorne disputes that the EEO counselor assigned to his case in March 2015 "made numerous contact[s] with [him]." Pl.'s Decl. ¶ 4. He also states that he "never received" the letter in April 2015 "instructing me to file a formal complaint" or the letter in November 2015 "notifying me of my right to file a formal complaint." *Id*. ¶¶ 5, 10. Thorne acknowledges that he told the EEO counselor on October 20, 2015 that he wanted time to consult with an attorney, *id.* ¶ 7, and he does not dispute that he never contacted the EEO counselor after that, *id.* ¶ 8. He says only that the EEO counselor was supposed to contact him but never did. *Id.* ¶ 9.

But even so, this is not a case in which "the EEO counselor completely dropped the ball on processing [an] informal claim" and "ignored [the] obligation under the regulations . . . to inform [Thorne] of his rights in the process." *Niskey*, 859 F.3d at 9. There is no genuine dispute that the agency sent notices to both the electronic and physical addresses that Thorne supplied and, in the case of his personal email address, still used. *See* Dietz Decl. ¶¶ 6, 11. Nor is there a genuine dispute that the agency reopened Thorne's claim, at his request, after sending the first notice. In addition, no "extraordinary circumstance" stood in Thorne's way. *Id.* at 7 (citation omitted). The record supports that Thorne received the two notices of his right to file, and even if he had not, his multiple filings before the MSPB and the EEOC show that he knew about the mixed-claim process but nonetheless failed to exhaust that remedy. And the counselor's failure to call Thorne back—even if true—did not excuse Thorne's missteps either. Thorne admits that he never called the counselor back but offers no reason why. Pl.'s Decl. ¶ 8. This failure shows that Thorne was not "pursuing his rights diligently." *Niskey*, 859 F.3d at 7 (citation omitted).

## CONCLUSION

For these reasons, the Court grants the defendant's motion for summary judgment. A separate order accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

August 23, 2019